UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CARL WAYNE ARD,

     Petitioner,

v.                                     Case No. 4:18cv452-WS-HTC

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Carl Wayne Ard, proceeding *pro se*, filed a petition under 28 U.S.C. § 2254 by delivering it to prison mail officials on September 27, 2018. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the petition, the State's response (ECF Doc. 21), and Ard's reply (ECF Doc. 23), the undersigned recommends the Petition be **DENIED** without an evidentiary hearing.

## I.    BACKGROUND

### A.    Factual Background

Ard was charged with aggravated battery of his girlfriend, Melissa Slisher, on July 17, 2011. ECF Doc. 21-1 at 43. As discussed more fully below, Slisher and

various medical providers testified at trial regarding Slisher's injuries, which included broken ribs and a punctured lung. The medical providers also provided testimony regarding what Slisher told them about the source of her injuries, namely that she was kicked or hit. Slisher, however, did not provide any testimony at trial or at her deposition implicating Ard as the person who assaulted her. Instead, Slisher testified that she could not recall how her injuries occurred that night. Thus, the majority of Ard's claims in this petition relate to the state court's admission of the out-of-court statements made by the medical professionals and the use of those statements to convict Ard.

The following pertinent facts are derived from the testimonies and evidence presented at the trial, which took place on May 16-17, 2012. *See* ECF Doc. 21-1 at 205 (Trial Transcript).

1. Slisher's Testimony

On July 17, 2011, Slisher was living with Ard, with whom she shared a romantic relationship. Both had been drinking all day, and both were intoxicated. An "incident" occurred between the two at Ard's residence, which "resulted in [Slisher] calling the ambulance." Slisher walked "four houses" down the road to meet the ambulance. She was taken to Weems Hospital and kept overnight. After she was released, she went to stay with a neighbor for two days and then moved back in with Ard. ECF Doc. 21-1 at 227.

On July 21, her symptoms got worse and her face swelled up. An ambulance took her to Weems and from there she was transported to Bay Medical Center the following day, where she stayed for a week. After her release, she went back to Ard's home. *Id.* at 228. From July 2011 to the date of trial, May 16, 2012, Slisher saw Ard romantically "on and off." *Id.* at 229. At the time of trial, she was living in a trailer in Ard's yard, but stated, "I live in his yard. I don't have contact with him."

On cross-examination, Slisher admitted she had consumed eighteen beers and some liquor on July 17, was intoxicated, and had thrown a metal dog dish at Ard that night. *Id.* at 230-31. She also confirmed that in her deposition she testified she blacked out, fell over a coffee table and when she came to, she had broken ribs and the coffee table was upended. *Id.* at 231. She testified authorities offered her several places to live after the incident, but she chose to return to Ard's residence. She further testified she had no specific recollection of Ard kicking her. *Id.* at 232.

On redirect, she admitted to testifying in her deposition that she told the ambulance driver the night of the incident that, "[she] had a confrontation with Wayne [Ard], but [she] did not want charges pressed." *Id.* at 234. She also admitted to still having feelings for Ard and dropping by his workplace to "visit with him and receive money from him." *Id.* at 235. Finally, she answered "Yes" to the question: "Do you recall during the questioning at the deposition you becoming upset and

stating that you don't know if you sustained your broken ribs from falling down over the table or when he hit you?" *Id.* at 235.

    2. <u>Testimonies From Medical Providers</u>

Thomas Reece, an EMT who responded to the scene on July 17 testified that when he asked Slisher how she sustained her injuries, "[s]he said she had been hit by her boyfriend." *Id.* at 238. She had a mark on her back that he "would speculate" was "from being struck." *Id.* at 239. During the ambulance ride, Slisher complained of pain in her side and "stated she had been kicked in the ribs at that time." *Id.* at 240.

Rebecca Gibson, a registered nurse who worked in the emergency room at Weems on July 17, treated Slisher around 2:30 a.m. Slisher had an abrasion on her forehead and told Gibson "she had been punched there." *Id.* at 246. Slisher also complained of pain in her rib cage and when asked how she received those injuries, Slisher "said that she had been kicked." *Id.* at 247. An x-ray showed Slisher had four broken ribs. *Id.* Dr. Ivers, an ER physician at Weems, treated Slisher on July 17, when "she presented with a main – the complaint was rib cage pain. She was kicked by her boyfriend." *Id.* at 298-99.

Gibson and Dr. Ivers were also on call on July 21, when Slisher returned to Weems because of swelling in her face and neck. *Id.* 249-50. Dr. Ivers suspected subcutaneous air from the lung had escaped and transferred Slisher the next morning

to Bay Medical Center, a facility of higher care.  *Id.* at 250.  On redirect, Gibson testified the red mark on Slisher's back was consistent with a blunt trauma.  *Id.* at 254.

Dr. William Campbell, a radiologist at Bay Medical, testified that the CAT scan of Slisher's chest showed a punctured lung in addition to the broken ribs, and that air had leaked into the abdomen.  *Id.* at 262-63.  Amy Gordon, an RN at Bay Medical who saw Slisher on July 21, testified that Slisher was swollen and had subcutaneous air on her face and neck and upper torso which had leaked from her punctured lung.  When asked if Slisher had told her how the injuries occurred, Gordon testified, that Slisher "said that she was kicked by her boyfriend." *Id.* at 269.  Dr. Finney, a surgeon at Bay Medical, also testified that Slisher explained to him she got her injuries when "her boyfriend beat her up," *Id.* at 277.

3.  Conclusion of Trial

After the State rested, the defense did not call any witnesses and Ard did not testify.  Defense counsel moved for a judgment of acquittal, arguing, among other things, that the victim testified she had no recollection of Ard kicking her on the day of her injuries.  Instead, the only evidence implicating Ard was provided "via hearsay from the . . . hearsay from the medical personnel." *Id.* at 302-03.  The court denied the motion for judgment of acquittal because "there is corroborating evidence in this

case, most notably the physical evidence, that the State presented a lot of testimony in evidence about." *Id.* at 306.

Ard was found guilty of the lesser included offense of felony battery and not the greater charged crime of aggravated battery. ECF Doc. 21-1 at 130. He was sentenced on July 9, 2012 as a habitual violent felony offender to ten years imprisonment. ECF Doc. 21-1 at 150-55.

### B.    Procedural History And Timeliness

Ard filed a timely notice of appeal on July 16, 2012. *Id.* at 140. The First District Court of Appeal ("First DCA") affirmed, *per curiam* and without written opinion, on September 24, 2013. ECF Doc. 21-2 at 130. The judgment became final December 23, 2013 (90 days after the date of the First DCA's judgment affirming the conviction). *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1274-75 (11th Cir. 2006) (a judgment of conviction becomes final, for purposes of § 2244(d)(1), on the date in which the United States Supreme Court either issues a decision on the merits of the petitioner's direct appeal or denies certiorari, or after the expiration of the 90-day period in which the petitioner could have filed a petition for a writ of certiorari).

Ard filed a motion under Fla. R. Crim. P. 3.850 on December 15, 2014, which was 357 days after the judgment became final. ECF Doc. 21-2 at 148. After a series of amendments, Ard's second amended 3.850 petition became the operative post-

conviction motion and the state court ruled on it in two parts.  First, the court denied all of the grounds except Grounds 1, 2 and 7, which the court set for an evidentiary hearing.[1]  ECF Doc. 21-3 at 124.  The court denied the remaining three grounds on May 12, 2017, after the evidentiary hearing.  *Id.* at 287.  Ard timely appealed the denial of the 3.850 motion, *id.* at 293, and the First DCA affirmed, *per curiam* and without written opinion.

Before the First DCA issued its mandate, Ard filed the instant petition by delivering it to prison mail officials on September 27, 2018.  The First DCA issued the mandate on October 16, 2018.  ECF Doc. 21-4 at 125.  Since only 357 untolled days passed before the filing of the federal petition, the petition is timely.  *See King v. Sec'y, Fla. Dept. of Corr.*, 2017 WL 6760186, *1 (11th Cir. Jan. 5, 2017) (holding federal one-year period is tolled upon properly filed postconviction motion and remains tolled until the appellate court issues its mandate).

## II.    STANDARDS OF REVIEW

### A.    Federal Review Of State Court Decision

Under the standard of review for a § 2254 motion, this Court is precluded from granting habeas relief unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[1] The transcript of the April 12, 2017 evidentiary hearing is located at ECF Doc. 21-3 at 315 to 21-4 at 44.

determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).  *See id.*, at 412-13 (O'Connor, J., concurring).  Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010).  Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the … case."  *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring).  Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

### B.    Legal Standard For Ineffective Assistance Of Counsel

Ard's petition includes several claims of ineffective assistance of counsel (Grounds Four, Six, Seven, Eight and Nine).  To prevail on these claims, Ard must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

Counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.  The deficient performance prejudiced the defendant only if the reasonable probability of a different result rises to a level that is "sufficient to undermine confidence in the outcome." *Id.* at 694.  To prevail on a claim of ineffective assistance of counsel, both parts of the *Strickland* test must be satisfied. *Bester v. Warden, Att'y Gen. of the State of Ala.*, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)), *cert. denied*, —— U.S. – ——, 137 S.Ct. 819 (2017).  However, a court need only address one prong, and if it is found unsatisfied, the court need not address the other prong. *Id.*

## III.   GROUNDS FOR RELIEF

### A.   Ground One, Two, Three, Four and Eight:  Relating To Lack Of Evidence To Prove The Offense Outside of Inadmissible Hearsay

Ard's first four grounds for relief and Ground Eight all revolve around the same issue – the admissibility of Slisher's out-of-court statements made to medical personnel during her treatment and whether such statements should have been used to convict him.  In Ground One, Ard frames this issue as a claim that the evidence presented at trial was insufficient to sustain his conviction.[2]  In Ground Two, Ard reframes the claim as one of trial court error in denying the motion for judgment of acquittal.  In Ground Three, Ard recasts the claim as one of a violation of the Sixth Amendment right to confrontation and cross-examination.  In Ground Four, Ard claims appellate counsel was ineffective for raising these claims on appeal.  In Ground Eight, Ard claims trial counsel was ineffective for failing to move *in limine* to exclude the out of court statements.

---

[2] To the extent Ard contends the trial court erred in admitting the victim's out-of-court statements, Ard has presented only a state law claim on the issue of hearsay, which is not subject to federal habeas review.  *Cohens v. Secretary*, No. 3:15-CV-1395-J-39MCR, 2018 WL 829132, at *6 (M.D. Fla. Feb. 12, 2018) ("When something is a matter of state law, it necessarily involves statutory interpretation of a state law by state courts.  In this particular instance, the question before the trial court was whether the statements at issue constituted hearsay under Fla. Stat. § 90.801."); *see Burr v. Estes*, 2016 WL 4134605, at *4 (N.D. Ala. June 24, 2016), *report and recommendation adopted sub nom. Burr v. Warden Dewayne Estes*, 2016 WL 4070149 (N.D. Ala. July 29, 2016) ("To the extent Burr raises a state-law claim for error in admitting the hearsay testimony, it is not a proper habeas claim.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

Since these grounds for relief overlap and address the same core issue, the undersigned will address the arguments together. In doing so, the undersigned finds that none of the grounds asserted entitle Ard to relief. As the State argues, the out-of-court statements were properly admitted as exceptions to the hearsay rule under Fla. Stat. § 90.803, and there was sufficient evidence presented to support a finding of guilt. ECF Doc. 21 at 17-18.

Ard exhausted these claims by raising them on direct appeal or in a post-conviction motion (as to Ground Eight). The First DCA affirmed, without written opinion, as to Grounds One, Two, Three and Four. Thus, as to those grounds "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principle to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). To be entitled to relief, Ard must show "there was no reasonable basis for the state court to deny relief." *Id.* at 98. As stated above, as to Ground Eight, Ard must show that the state court's decision was contrary to clearly established law or was an unreasonable application of the facts. For the reasons set forth below, the undersigned finds that Ard is not entitled to relief on these five grounds.

    1.   <u>Sufficiency of the Evidence</u>

When reviewing a claim of sufficiency of the evidence on federal habeas review, this Court is required to view the evidence in the light most favorable to the

prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The undersigned finds that the evidence presented at trial meets that standard.

Under Florida law, statements describing the inception or cause of illness or injury are admissible under an exception to the hearsay rule if they are reasonably pertinent to diagnosis or treatment and the individual making the statements knew the statements were being made for that purpose. Fla. Stat. §90.803(4); *State v. Jones*, 625 So. 2d 821 (Fla. 1993). Thus, "[i]n addition to statements about symptoms, statements describing the inception or cause of an illness or injury are admissible under the exception if they are reasonably pertinent to diagnosis or treatment." *Torres-Arboledo v. State of Fla.*, 524 So.2d 403, 407 (1988).

Slisher's out-of-court statements were made to medical personnel in response to questions regarding the source or cause of her injuries and were used for the purpose of determining how to treat her injuries. Indeed, more times than not, although Slisher stated she was hit or kicked, she did not identify who did the hitting or kicking. Thus, her "motive in making the statement [was] consistent with the purposes of promoting treatment" and not merely to accuse Ard. *State v. Jones*, 625 So. 2d 821, 824 (Fla. 1993). Also, statements that her injuries were caused by blunt trauma (kicking or hitting), are the type of statements that are "reasonably relied on

by a physician in treatment or diagnosis." *Id.* Because Slisher's out-of-court statements fall under a hearsay exception, they constitute substantive evidence of guilt on which the trier of fact could have relied in finding Ard guilty.

Additionally, the State offered medical records and testimony from treating medical professionals, which corroborated Slisher's out-of-court statements. Reece, Gibson and Finney testified that Slisher told them she had been beat up, punched and kicked, and none found that the injuries were inconsistent with Slisher's explanation. Reece and Gibson testified the mark on Slisher's back was consistent with being struck and blunt trauma. Additionally, Gibson testified that an abrasion on Slisher's head was consistent with being punched. Also, Drs. Finney and Campbell testified that Slisher had broken ribs and a punctured lung, injuries that, again, were consistent with being kicked or hit.

Moreover, Slisher testified she called the ambulance the night of the incident and walked "four houses down" too meet it, even though she had four broken ribs and a punctured lung. After being released, she did not return to Ard's house where she had been living; instead, she stayed two days at a friend's house first. The jury could infer from this evidence that Slisher was afraid of Ard because it was Ard who caused Slisher's injuries. Thus, the undersigned finds Ard has failed to show that that "[no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson,* 443 U.S. at 319.

2.    Florida Law Does Not Preclude the Conviction of a Defendant Based on Admissible Hearsay

Ard argues that even if the hearsay statements were admissible, they cannot be used alone to convict him.  Florida appellate courts have rejected this argument. In *Anderson v. State*, 655 So. 2d 1118, 1120 (Fla. 1995), the Florida Supreme Court declined "to enunciate a blanket rule that no conviction can stand based solely on hearsay testimony."  *See also, Williams v. State*, 714 So. 2d 462 (Fla. 3rd DCA 1997) (statements admitted under the excited utterance exception "were, on their own, sufficient to deny the defendant's motions for judgment of acquittal and to send the case to the jury").

Ard argues, however, that *Anderson* and *Williams* were superseded by *Crawford v. Washington*, 541 U.S. 36 (2004).  Ard claims, "[f]ollowing the *Crawford* decision, no criminal conviction can stand when it is secured exclusively on the basis of uncorroborated out-of-court pretrial statements."  ECF Doc. 1 at 9. Ard's interpretation and application of *Crawford* is misplaced.

The issue before the Supreme Court in *Crawford* was whether out-of-court statements made by the defendant's wife during police interrogation was admissible at trial when the wife did not testify because of a marital privilege.  The Court held that the Confrontation Clause bars admission of such testimony "unless the declarant was unavailable to testify, and the defendant had had a prior opportunity for cross

examination." 541 U.S. at 53-54. *Crawford*, thus, is inapplicable and does not go as far as Ard suggests. The holding in *Crawford* is limited to the admissibility of statements by a non-testifying declarant, made during an interrogation. It is not whether admissible hearsay could be used to convict a defendant – which is the issue raised by Ard.

Indeed, the Court made clear the limited application of *Crawford* when it affirmed a conviction based on out-of-court statements made during an emergency 911 call in *Davis v. Washington*, 126 S.Ct. 2266 (2006). In *Davis,* the victim named her abuser during a 911 call seeking police intervention with a domestic battery. *Id*. at 2271. Since the "primary purpose [of the out-of-court statement in *Davis*] was to enable police assistance to meet an ongoing emergency," the Court found the statement was non-testimonial, and *Crawford* did not apply. Thus, the *Davis* Court limited the holding in *Crawford* to (1) statements made in a testimonial context (such as a police interrogation or pre-trial deposition) and (2) cases where the declarant was unavailable to be cross-examined at trial. Neither of those circumstances exist here.

3.   The Admission of Slisher's Out of Court Statements Did not Violate the Sixth Amendment Rights

Ard argues the admission of Slisher's out-of-court statements violated his Sixth Amendment Rights to confront her because she testified she had no recollection as to how she was injured.  ECF Doc. 1 at 11.

As discussed above, this argument has no merit.  The Confrontation Clause bars admission of "testimonial statements of a witness who did not appear at trial unless the declarant was unavailable to testify, and the defendant had had a prior opportunity for cross examination."  *Crawford*, 541 U.S. at 53-54.  Slisher's out-of-court statements were non-testimonial ***and*** the declarant, Slisher, testified at trial (and was cross-examined).  Slisher's testimony that she had no recollection of how she was injured did not prevent her from being cross-examined on her out-of-court statements.

4.   Ineffective Assistance of Appellate Counsel

Ard's claim that appellate counsel was ineffective for failing to raise these hearsay arguments on appeal does not warrant relief because counsel cannot be ineffective for failing to raise meritless issues.  *Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013).

5.    (Ground Eight) - IATC For Failing To File A Pretrial Motion *In Limine*

Ard argues trial counsel should have filed a motion *in limine* to preclude the medical providers from testifying about Slisher's out of court statements.[3]  ECF Doc. 1 at 21-22.   Ard exhausted this claim by raising it in his second amended postconviction motion.  ECF Doc. 21 at 51 (motion is at ECF Doc. 21-2 at 253). Because the First DCA issued a *per curiam* affirmance of the denial of Ard's motion, this Court will "look through" that decision to the Order Denying Motion for Post-Conviction Relief, ECF Doc. 21-3 at 124, the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning.  *See Wilson*, 138 S. Ct. at 1192.

The state court denied relief on this ground because such a motion would have been futile since the statements were admissible under the hearsay exception of statements made for purposes of medical diagnosis or treatment.  ECF Doc. 21-3 at 126 (citing Fla. Stat. § 90.803(4)).  As the state court noted, this issue was raised by defense counsel during his motion for judgment of acquittal, which the court denied. *Id.*  Once again, counsel cannot be found ineffective for failing to raise a meritless motion.  *See Brown*, 720 F.3d at 1335.

---

[3] The State did not separately respond to this issue in its Answer, ending its analysis on "Issue VII," which it construed as a claim of cumulative error, which was actually Ard's argument in Ground Nine, not Ground Seven.

**B.    Ground Five: Ineffective Assistance of Appellate Counsel For Failing To Raise Challenge To Jury Instructions On Direct Appeal**

Ard argues the trial court erred in fashioning its own jury instruction on aggravated and felony battery over the objection of trial counsel and that appellate counsel was ineffective for failing to raise such error on direct appeal. ECF Doc. 1 at 14. Ard exhausted this claim by raising it in his petition for writ of habeas corpus alleging ineffective assistance of appellate counsel he filed with the First DCA. ECF Doc. 21 at 33 (the petition is at ECF Doc 21-4 at 129). The First DCA denied the motion without written opinion. ECF Doc. 21-5 at 173. Thus, to be entitled to habeas relief, Ard must show "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

During a hearing on the jury instructions, the prosecutor asked the court to add the following language to the standard felony battery jury instruction:

> The intent with which an act is done is an operation of the mind, and therefore, it's not always capable of direct and positive proof. It may be established by circumstantial evidence like any other fact in a case.

*Id.* Defense counsel initially objected to the special instruction, *Id.* at 327-28, but acquiesced when the court explained that the instruction would be reworded to include additional language that "intentionally means willfully and purposefully." *Id.* at 330.

Error in jury instruction claims are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred. *See Castor v. State,* 365 So.2d 701 (Fla.1978); *Brown v. State,* 124 So.2d 481 (Fla.1960). Because trial counsel agreed to the court's revised jury instruction, there would have been no basis for appellate counsel to challenge the jury instruction on appeal unless counsel could show a fundamental error had occurred.

To establish fundamental error, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Brown,* 124 So.2d at 484; *see State v. Delva*, 575 So. 2d 643, 644–45 (Fla. 1991). The court's jury instruction was not an error, much less a fundamental error. Florida courts recognize that "[a] case presenting direct evidence of someone's intent is rare, and as such, it is proper and commonly the case for the State to rely solely on circumstantial evidence to establish intent in the absence of direct evidence." *State v. Waters*, 436 So.2d 66, 71 (Fla. 1983) ("The element of intent, being a state of mind, often can only be proved by circumstantial evidence."). Thus, the jury instruction was a correct statement of Florida law and a reasonable basis exists for the state court's denial of relief. *See Brown*, 720 F.3d at 1335 (appellate counsel's failure to raise a meritless issue does

not constitute deficient performance which falls measurably outside the range of constitutionally acceptable performance).

### C.    Ground Six: Ineffective Assistance Of Trial Counsel ("IATC") For Giving Him Misinformation, Resulting in Ard Not Testifying At Trial

In Ground Six Ard argues he did not testify at trial because counsel mislead him into thinking that, if he testified, the nature of his prior felony convictions would be used to impeach him.  *Id.*  Ard claims he would have testified if he had known that only the number of his prior felonies would have been disclosed to the jury.  *Id.* He further argues that if he had testified he would have been able to present his version of the facts to the jury, which would have shown that he was merely defending himself against attacks by Slisher, who was drunk and belligerent.  He would have also testified that Slisher was injured when she fell over the coffee table and then down the outside stairs -- and not because he punched or kicked her.  ECF Doc. 21-2 at 266; ECF Doc. 1 at 15-16.

Ard exhausted this claim because he raised it in his second amended postconviction motion.  ECF Doc. 21 at 51 (motion is at ECF Doc. 21-2 at 253). Because the First DCA issued a *per curiam* affirmance of the denial of Ard's motion, this Court will "look through" that decision to Order Denying Motion for Post-Conviction Relief.  ECF Doc. 21-3 at 287.

This was one of the claims on which the state court held an evidentiary hearing. ECF Doc. 21-3 at 315. During the hearing, Ard testified that "Mr. Hill told me – advised me not to [testify], because he said that the jury would learn my felony history." ECF Doc. 21-3 at 324. When Ard was asked what he took that to mean, Ard responded, "I took that that they would learn the whole story of each felony I had, and the event. . . . [E]ach time he talked to me, he said my felony history was too bad. He advised me not to take the stand." *Id.* Ard testified this conversation occurred three different times, and trial counsel also told him the jury would learn he had been to prison. *Id.* at 325.

Ard also testified that counsel never told him that the jury would not be able to hear the details of each conviction, unless Ard denied them under oath. *Id.* On cross-examination, however, Ard admitted trial counsel also had not told him the jury "would find out the nature of those charges," and that he reached that conclusion because "that's the way [he] was thinking." *Id.*

Trial counsel also testified at the evidentiary hearing. ECF Doc. 21-3 at 359. During counsel's direct testimony, the state court noted that the dispute was over "semantics … about what the word history means." *Id.* at 367. The state court asked counsel, "Did you ever, at any point in time, tell him they would learn the nature or specifics of those?" Trial counsel answered, "Never." *Id.* Trial counsel further explained:

> [W]hen I talked to Mr. Ard, I told him what the jury would hear.  They
> would learn of his felony history.  And I asked him did he have any
> questions, and he said he understood.  And he never asked me he never
> asked me any questions about, well are they going to learn this or are
> they going to learn that.  I give him my advice, does he understand it?
> He tells me yes. I -- I was under the impression, based on what he's
> telling me, that he understands me.

ECF Doc. 21-4 at 9.

Trial counsel also testified as to the strategic reasons he had for not calling Ard to testify, including that Ard had a lengthy felony history and Slisher had already presented the heart of the defense: that she was intoxicated and fell and that she did not remember Ard battering her.  Counsel opined that Ard's testimony did not add enough to Slisher's testimony to overcome the potential prejudicial effect introducing the number of his felony convictions could have on the jury.  ECF Doc. 21-3 at 365-67.

In its written opinion, the state court found trial counsel's performance deficient because counsel "should have explained what he meant when he told the defendant that the jury would learn of his criminal history if he testified." *Id.* at 288. However, the state court found that Ard was not prejudiced by not testifying because "the jury had already heard from the victim herself that she was very intoxicated, that she had consumed eighteen beers, and that she blacked out and fell over a table. She said she had no recollection of the defendant kicking her."  Thus, there was nothing additional Ard would have added other than that Slisher also hit him three

times and fell down the steps.  However, whether her injuries were from falling down steps or a table was irrelevant because "[t]he key issue was whether the injuries were accidental or intentional". *Id.* at 289-91.  Moreover, it was irrelevant whether Slisher had also struck Ard because Ard was not claiming self-defense and "the victim had already admitted to being extremely intoxicated such that she blacked out." *Id.*

Thus, the state court found that the risks associated with Ard's testimony greatly outweighed any benefit.  "If he testified as above that she was aggressive and struck him several times, it would actually have strengthened the state's case, as it would have given him a motive.  He would also be questioned about his consumption of alcohol that evening.  In addition, had he taken the stand, he would have had to explain why, if it was an accident, he didn't seek medical assistance for her, drive her to the emergency room, or follow her to the hospital, why she had the ambulance come to an address four houses down, and why she waited until he had gone to bed to call the ambulance.  And as noted above, had he testified, he would have been subject to impeachment with prior convictions." *Id.*

Additionally, the state court noted that there was the chance Ard would have made an unfavorable impression on the jury, come across as unbelievable or show a bit of temper on cross.  And, even though trial counsel did not specifically address those matters, the trial court's "impression at the hearing was that [Ard] might come

across as a little arrogant and argumentative, as illustrated by his dismissive statement that he had to tell his lawyer when to object during trial." *Id.*

A federal court may not overturn the state court's adjudication on the merits unless it is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the … case." *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring). Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

"Under § 2254(d)(2), 'a state-court['s] factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. Instead, AEDPA requires that [the federal court] accord the state court substantial deference. 'If reasonable minds reviewing the record might disagree about the finding in question,' the federal court nonetheless must yield to the state court's factual determination. AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' Clear and convincing evidence is a 'demanding but not insatiable' standard, requiring proof that a claim is highly probable.' '[H]ighly probable' is a standard that requires 'more than a preponderance of the evidence but less than proof

beyond a reasonable doubt.'" *Nejad v. Attorney Gen., State of Georgia*, 830 F.3d 1280, 1289 (11th Cir. 2016) (internal citations omitted).

Applying those standards of deference, the undersigned finds that the state court's determination was neither contrary to law nor objectively unreasonable. The state court's determination that trial counsel's performance, even if deficient, was not prejudicial was consistent with *Strickland*. Indeed, "[i]t is especially difficult to succeed with an ineffective assistance claim questioning the strategic decisions of trial counsel who were informed of the available evidence. Even a dozen years before there was any AEDPA deference, the Supreme Court noted that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Nance v. Warden Georgia Diagnostic Prison*, 922 F.3d 1298, 1302 (11th Cir. 2019)

Similarly, the state court did not unreasonably apply the facts to the law. Ard's testimony would not have materially added to what the victim already provided, and any beneficial value to be obtained from that testimony was outweighed by the potential pitfalls associated with having Ard testify. The court based its findings on its impression of Ard during the evidentiary hearing and this Court should defer to the state court on such credibility determinations. *See Consalvo v. Sec'y for Dept. of Corr.*, 664 F. 3d 82, 845 (11th Cir. 2011) ("[d]etermining the credibility of witnesses is the province and function of the state

courts, not a federal court engaging in habeas review"). This simply is not the "rare case" in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding. *See Johnson v. Sec'y Dept. of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011).

Also, during the trial, before the State called its last witness, the court engaged in a colloquy with Ard concerning his right to testify. ECF 21-1 at 286. The court informed Ard that the decision whether to testify was his alone to make, with his lawyer's advice. *Id.* Defense counsel indicated Ard probably would not testify, and the judge told Ard she would formally ask him if he wanted to testify the next day, which she did. *Id.* Ard said he had had sufficient time to discuss the decision with his counsel and would not be testifying. *Id.* at 293. Ard admitted during the evidentiary hearing that he raised none of his concerns with the court during the colloquy.

## D.    Ground Seven: IATC For Failing To Call Witnesses Carl Sanders And Vivian Champion

Ard also contends he was unable to present his version of events to the jury because trial counsel failed to call witnesses Carl Sanders and Vivian Champion to testify. According to Ard, Sanders and Champion were eyewitnesses who would have testified the victim was in a drunken stupor, attacked Ard several times, and injured herself by falling over the coffee table and then falling down the front steps.

ECF Doc. 1 at 18-19. He further contends that, prior to trial, he informed his counsel of these witnesses and their likely testimonies, but nonetheless they were not called at trial. He argues he was prejudiced because "had the jury been apprised of the acts, which actually took place on the night in question through Carl Sanders and Vivian Champion's testimony, no jury would have been able to convict said defendant." *Id.* at 19.

Ard exhausted this claim by raising it in his second amended postconviction motion. ECF Doc. 21 at 51 (motion is at ECF Doc. 21-2 at 253). The First DCA issued a *per curiam* affirmance. Thus, this Court will "look through" that decision to the Order Denying Motion for Post-Conviction Relief. *See Wilson*, 138 S. Ct. at 1192; ECF Doc. 21-3 at 287.

At the evidentiary hearing, Ard testified as to what Sanders and Champion would have said had they been called as witnesses. According to Ard, Sanders witnessed Slisher "drinking beer and straight liquor," that she got mad at Ard, hit him the head with an ash tray," and that even though she walked away, she came back after a few minutes and slapped him again three times. ECF Doc. 21-3 at 322-23. Sanders would have also testified seeing Slisher fall down and hurt herself. *Id.* Ard also testified that Champion was "there too" and would testify consistently with Sanders. *Id.* at 323.

Trial counsel's testimony at the evidentiary hearing, however, was different. Trial counsel testified he tried, but was not able, to speak with Sanders. *Id.* at 376. He did speak with Champion who told him that although both she and Sanders saw Slisher intoxicated and saw her hit Ard with an ash tray several different times, both left Ard's house before Slisher got injured. Thus, neither saw Slisher fall, as Ard had represented. ECF Doc. 21-3 at 363.

Counsel also testified he did not call them to testify because he did not believe their testimonies added anything to the defense's case. Instead, their testimonies were consistent with what Slisher had already told the jury. Moreover, their testimonies could also backfire by showing that Ard injured Slisher because he was mad at her for hitting him.

The state court denied relief on this ground because "defendant did not produce these people at the hearing to testify as to what they saw and heard." ECF Doc. 21-3 at 291. Thus, the court "had no way to evaluate their demeanor and otherwise determine their credibility as witnesses." *Id.* Instead, what Defendant presented was hearsay in the form of affidavits from the witnesses and his testimony as to what they would have said if called at trial, which was objected to by the state. *Id.*

The undersigned finds that Ard is not entitled to habeas relief on this claim. The state court was left with a "he said, she said" situation between trial counsel and

Ard.  The state court was, thus, not unreasonable in finding that it could not resolve the dispute in Ard's favor without hearing from the witnesses at the evidentiary hearing.  Without knowing whether the witnesses were indeed eyewitnesses to the fall, the state court could not find that counsel's performance was deficient or prejudicial.  "Under AEDPA, '[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) (quoting *Schriro*, 550 U.S. at 473, 127 S.Ct. 1933).  "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Nejad v. Attorney Gen., State of Georgia*, 830 F.3d 1280, 1290 (11th Cir. 2016), quoting *Knowles*, 556 U.S. at 123.

### E.    Ground Nine: IATC Due To The Cumulative Effect Of Errors Made By Trial Counsel Rendering His Trial Result Unreliable

Finally, Ash argues that even though he had "a person who happened to be a lawyer present at trial alongside" him, the multiple errors of counsel taken together deprived him of effective assistance of counsel.  ECF Doc. 1 at 23.  The State responds that Ard's "vague allegation does not support a claim for federal habeas relief.  Petitioner has failed to allege anything more than the cumulative effect of

trial counsel's errors deprived him of due process, which is not a violation of the due process clause." ECF Doc. 21 at 56.

Ard exhausted this claim because he raised it in his second amended postconviction motion. ECF Doc. 21 at 51 (motion is at ECF Doc. 21-2 at 253). Although the state court held an evidentiary hearing on this claim, the court did not explain its denial of relief on this ground in its Order Denying Motion for Post-Conviction Relief. ECF Doc. 21-3 at 287. Thus, Ard must show "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813, 821 (2006). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).

Because the state court determined that none of Ard's individual claims of error or prejudice have merit, it was not unreasonable for the state court to also deny

relief for cumulative error. *See United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Moreover, the undersigned finds that the state court's determinations of the individual grounds for relief were not objectively unreasonable.

## IV.    CONCLUSION

For the reasons above, Ard is not entitled to habeas relief on any of his claims.

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must consider the deferential standards prescribed by § 2254, particularly where the state court held an evidentiary hearing on four (4) of the claims asserted in this petition. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

## B. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.    That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Ard*, 11-160CFMA, in the Second Judicial Circuit, in and for Franklin County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2.    That a certificate of appealability be DENIED.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 18th day of February, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.